1

2

3

4 **UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**
5

6

7 BIRD-B-GONE, INC.,

8                    Plaintiff,                                    2:18-cv-00819-RJC-NJK

9          vs.                                                     **ORDER**

10 HAIERC INDUSTRY CO., LTD.,

11                    Defendant.

12

13          This case arises from allegations of patent infringement. Now pending before the Court is

14 a motion for default judgment against Defendant Haierc Industry Co., Ltd. ("Haierc"). (Mot.

15 Default J., ECF No. 19.) For the reasons given herein, the Court grants the motion.

16 **I.     FACTS AND PROCEDURAL HISTORY**

17          Plaintiff Bird-B-Gone, Inc. is a California corporation specializing in the manufacture

18 and sale of professional bird deterrents. At issue in this case are eight United States patents

19 related to Bird-B-Gone's "bird spikes" products, which are designed to prevent birds from

20 landing in unwanted areas: U.S. patent nos. 7,596,910; 8,276,324; 8,479,457; 7,941,977;

21 8,250,814; 8,191,303; 8,365,457; and 8,601,747. Haierc is a Chinese company selling similar

22 products internationally through various websites, including www.haierc.com and

23 www.haiercpestcontrol.com, as well as on Amazon and eBay. Bird-B-Gone alleges that at least

24 seven of Haierc's products infringe its bird spikes patents. (Compl. ¶¶ 12–17, ECF No. 1.)

Bird-B-Gone further alleges that Haierc has participated as an exhibiting vendor at the National Hardware Show, an annual trade show held in Las Vegas, every year since 2013. On March 23, 2018—prior to the May 2018 National Hardware Show—Bird-B-Gone served a cease and desist letter on Haierc, in English and Chinese, advising Haierc that certain of its products directly infringe Bird-B-Gone's patents. The letter also stated:

> [Bird-B-Gone] is also informed and believes that Haierc intends to market the Infringing Products at the National Hardware Show from May 8–10, 2018. Unless Haierc agrees to cease advertising and offering the Infringing Products for sale, my client intends to file a lawsuit seeking a temporary restraining order preventing Haierc from exhibiting and selling the Infringing Products at the National Hardware Show.

(Cease and Desist Letter 2, ECF No. 1-8.) Haierc responded to the letter on March 27, through its General Manager and CEO Zhenghai Chen. Mr. Chen refused to comply with the letter's demands, and provided two reasons for his refusal. First, he claimed ownership of patents covering his products which predate the patents identified in Bird-B-Gone's cease and desist letter. Second, he stated that "only one model of the products is infringing the U.S. patent(s), which he has admitted in previous communications with [Bird-B-Gone] and has hence stopped exporting such model to U.S." (March 27 Email, ECF No. 1-9.)

On May 8, 2018, Haierc attended the National Hardware Show and "refused to stop importing, offering for sale, and selling the Infringing Products through various channels, including Amazon.com." (Compl. ¶ 23.) The same day, Bird-B-Gone filed the instant patent infringement action, and served a summons and complaint on Haierc by personal service. (Mot. Default J. 2, ECF No. 19.) On May 21, Bird-B-Gone filed a stipulation, signed by Mr. Chen, to extend the deadline to respond to the complaint until June 12. The stipulation indicated the parties were involved in "ongoing discussions regarding a potential extrajudicial resolution of this matter." (Stip. ¶ 3, ECF No. 10.)

1    However, Haierc ultimately opted not to answer or otherwise defend against the

2    complaint. Accordingly, on June 22, 2018, Bird-B-Gone filed a three-day notice of intent to seek

3    entry of default. Haierc took no action in response. On July 2, the Clerk of Court entered default

4    against Haierc. (Clerk's Entry of Default, ECF No. 18.) Bird-B-Gone now moves the Court for a

5    default judgment and permanent injunction. (Mot. Default J., ECF No. 19.)

6    **II.    LEGAL STANDARDS**

7    Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782

8    F.2d 1470, 1471 (9th Cir. 1986). First, the clerk must enter a party's default. FED. R. CIV. P.

9    55(a). The party seeking the default must then petition the court for a default judgment. *Id.* at

10   55(b)(2). "A grant or denial of a motion for the entry of default judgment is within the discretion

11   of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). Default judgments are

12   generally disfavored, and courts should attempt to resolve cases on their merits to the greatest

13   extent practicable. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002) (citing

14   *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)).

15   In order for a court to determine whether to "exercise its discretion to enter a default

16   [judgment]," the court should consider seven factors:

17   (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's
     substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
18   stake in the action, (5) the possibility of a dispute concerning material facts, (6)
     whether the default was due to excusable neglect, and (7) the strong policy
19   underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

20   *Id.* (citing *Eitel*, 782 F.2d at 1471–72). "In applying this discretionary standard, default

21   judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F. R. D. 431,

22   432 (C. D. Cal. 1999). Upon entry of default, all well-pled facts in the complaint are taken as

23   true, except those relating to the amount of damages. *TeleVideo Sys. , Inc. v. Heidenthal*, 826 F.

24   2d 915, 917–18 (9th Cir. 1987).

## III.    ANALYSIS

### a.    Default Judgment

The Court will grant the motion and enter a default judgment against Haierc. The complaint is sufficient, and its allegations, taken as true, demonstrate a high likelihood that Haierc has infringed and will continue to infringe Bird-B-Gone's patents in the absence of a considerable deterrent. Haierc has refused to appear in this action despite accepting service and engaging in negotiations with Bird-B-Gone. Therefore, Bird-B-Gone will be prejudiced if default judgment is not entered, as it will be blocked from effectively pursuing its claims. It is also rather clear that Haierc's default was not due to excusable neglect, as evidenced by the timely stipulation to extend its answer deadline. With respect to the fourth *Eitel* factor, concerning "the amount of money at stake in relation to the seriousness of Defendant's conduct," *see PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002), Bird-B-Gone does not request an award of monetary damages, but only a permanent injunction to stem future infringement. Accordingly, this factor is neutral.

Mr. Chen's response to the cease and desist letter suggests the possibility of a dispute concerning material facts. However, the Court finds Haierc had ample opportunity to raise such a dispute and has freely chosen not to do so. If, in fact, Haierc's patents are prior to those of Bird-B-Gone, or if Haierc's products do not infringe the Bird-B-Gone patents, Haierc could well present those arguments and any supporting evidence to this Court, and thus put an end to Bird-B-Gone's demands and threats of legal action. However, given the level of contact between the parties, Haierc's failure to defend appears to have been a conscious and deliberate decision, which is indicative of an effort to avoid a true determination of the material facts of this case.

On balance, therefore, the factors weigh in favor of granting default judgment.

/ / /

## b. Requested Relief

Under Supreme Court precedent, a permanent injunction does not automatically follow a determination of patent infringement under the Patent Act, but a four-part test must be met. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 393–94 (2006). Thus, the party seeking a permanent injunction has the burden of demonstrating: (1) irreparable harm; (2) the lack of adequate remedies at law; (3) that the balance of hardships weighs in its favor; and (4) that the injunction is in the public's interest. *Id.* at 392–93. Here, Bird-B-Gone has satisfied its burden.

The complaint and attached exhibits show that Haierc has imported, advertised, and sold—and continues to import, advertise, and sell—products that infringe Bird-B-Gone's valid U.S. patents. Because Haierc has failed to respond to the complaint, it is not possible to determine with certainty whether and to what extent it will continue selling the infringing products in the future. However, without the issuance of an injunction, the continued sale of such products will likely result in a loss of market share, price erosion, and damage to Bird-B-Gone's reputation and goodwill. *See Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996); *Otter Prod., LLC v. Anke Grp. Indus. Ltd.*, No. 2:13-cv-29, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Du, J.) (recognizing "irreparable injury . . . in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill . . . ."); *Farmer Brothers Co. v. Albrecht*, No. 2:11-cv-1371, 2011 WL 4736858, at *3 (D. Nev. Oct. 6, 2011) (Pro, J.) ("Loss of customers or goodwill constitutes irreparable harm, so long as such loss is not speculative.").

Furthermore, because Haierc has refused to participate in this litigation, Bird-B-Gone cannot adequately assess its damages, and any damages based on price erosion or loss of goodwill would be very difficult to value. As a result, Bird-B-Gone lacks an adequate remedy at law. Haierc also faces no hardship in refraining from its infringement of Bird-B-Gone's patents,

whereas Bird-B-Gone faces significant losses and damage to its reputation. Lastly, the public interest weighs in favor of granting an injunction. Haierc is actively representing certain products as its own and receiving revenues from their sale that rightfully belong to Bird-B-Gone. Permitting such infringement discourages future innovation by failing to provide an adequate forum through which patentees can protect their own ideas. *See Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983) ("Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.").

### c. Attorneys' Fees

Bird-B-Gone also requests an award of $68,331.24 in fees and costs. (Mot. Default J. 13–19, ECF No. 19.) Pursuant to 35 U.S.C. § 285 of the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). In the context of a default, because all factual allegations in the complaint are deemed true, a pleading that infringement was willful is sufficient to establish entitlement to attorneys' fees. *See id.*

Here, Bird-B-Gone has specifically pled willful infringement, which allegations the Court must accept as true. Moreover, Bird-B-Gone points to persuasive evidence of deliberate

infringement by Haierc, including the cease and desist letter, Haierc's direct response to the letter, Haierc's subsequent infringement at the National Hardware Show, and Haierc's refusal to participate in this action despite clearly having notice and opportunity. This is more than sufficient to support the Court's finding that Haierc's infringement is willful and that this is therefore an exceptional case under section 285.

The Court turns next to the reasonableness of the fee request. To determine reasonable attorneys' fees, courts in the Ninth Circuit use the "lodestar" method. Under this method, the court multiplies the number of hours reasonably expended in the litigation by the reasonable hourly rate of the attorney. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–65 (9th Cir. 1995). In calculating the lodestar figure, the court considers the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed on the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 n. 3 (9th Cir. 2000) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

Here, the request of $68,331.24 reflects fees and costs incurred by Bird-B-Gone from March through July 2018. In support of the request, Bird-B-Gone has submitted the affidavit of Robert D. Fish, founding partner of Fish IP Law LLP ("Fish Law"), California counsel for Bird-B-Gone, as well as detailed time entries for all the work performed on this action. (Fish Aff., ECF No. 19-5.) The time records indicate that attorneys and support staff at Fish Law have spent

206.55 hours on the case, and that Bird-B-Gone's local Nevada counsel, The Amin Law Group, has accrued 19.9 hours.

After a thorough review of the records, the Court is of the impression that the amount of time spent on this case by Fish Law is certainly on the high end. Over a five-month period, Fish Law spent over 200 hours on a matter that was quickly resolved in a default judgment. The litigation required no discovery and virtually no motion practice. The Court understands that significant time was necessarily spent on other considerations. For example, Fish Law drafted a sophisticated and thorough complaint, which included a detailed claim chart. Haierc's status as a foreign corporation raised issues requiring additional research and discussion as well as continual coordination with Chinese counsel. Substantial time was spent in communication with Haierc, including the drafting of the cease and desist letter and ensuing settlement negotiations lasting more than a month.

However, it also appears that excessive time was spent on ultimately inconsequential tasks. The most glaring example is the total time spent on entries including reference to a motion for temporary restraining order that was never actually filed. By the Court's calculation, at least 31.3 hours' worth of entries were directed primarily, if not exclusively, at preparing the motion for TRO.[1] An additional 54.8 hours' worth of entries were directed at least partially at preparing the same unnecessary motion.[2] The Court is sensitive to the time is takes to develop litigation strategy and understands that some work may be completed in pursuing a certain path which eventually proves fruitless. However, the very purpose of a TRO is to preserve the status quo in

---

1  The Court appreciates that 11.1 of these hours were provided at no charge to the client, and certainly will make no reduction in the requested fee based on hours not actually billed.

2  For example, a 5.8-hour entry on March 13, 2018, provides: "Researched on 1) how to obtain TRO in Las Vegas; 2) whether internet activity gives Las Vegas court jurisdiction; revised and translated the cease and desist letter."

circumstances so urgent as to necessitate court action even before adverse parties have had an opportunity to respond. Despite the emergency nature of a TRO request, however, Fish Law's time records show that they discussed and developed their motion for TRO over a period of more than five weeks, from March 13 to April 19, 2018, before ultimately abandoning the idea completely. This tends to suggest that, in reality, no emergency existed, and the motion for TRO was likely superfluous from the outset.

Based on the foregoing, the Court finds that some reduction in Fish Law's hours is warranted. Allowing for the time it takes to refine a litigation strategy, the Court will not eliminate all hours spent working on the motion for TRO. (In any event, such an endeavor would be extraordinarily complicated because much of the work on that motion was recorded in compound time entries addressing multiple tasks.) However, the Court finds it appropriate to disregard the time entries that relate exclusively or primarily to work on the motion for TRO. This strikes an appropriate balance between permitting attorneys to find their way to the best approach to the litigation while also discouraging excessive work on ultimately needless assignments. Accordingly, the following entries will be disallowed:

| Date | Attorney Initials | Description of Work | Hours | Amount Charged |
|---|---|---|---|---|
| 20-Mar-18 | SHU | Researched legal standards for TRO at Nevada District Court; gathered facts; began drafting TRO. | 3.50 | $1,120.00 |
| 21-Mar-18 | SHU | Drafted TRO requesting injunction relief; addressing four factors including likely winning on merits, irreparable harm, balancing equities, and public interest. | 3.20 | $1,024.00 |
| 22-Mar-18 | SHU | Further legal research into requirements for successful TRO, drafted request for seizure order and ex parte motion in Las Vegas district court. | 6.50 | $2,080.00 |

| | | | | | |
|---|---|---|---|---|---|
| 26-Mar-18 | MJL | Worked with S. Liu on temporary restraining order (half rate). | 2.00 | $250.00 |
| 27-Mar-18 | MJL | Reviewed and revised declaration for J. van Loben Sels in support of ex parte request for temporary restraining order. | 1.80 | $450.00 |
| 29-Mar-18 | SHU | Conferred with M. Lusich and Revised TRO to argue why notice to Defendant should not be required (half rate). | 1.50 | $240.00 |
| 03-Apr-18 | MJL | Reviewed and revised papers for filing temporary restraining order; reviewed updated memo re timing of filing complaint and ex parte request for restraining order. | 1.70 | $425.00 |

The second step in addressing the reasonableness of a fee request is to determine the

reasonable hourly rate. Factors relevant to this analysis include: (1) the novelty and difficulty of

the questions involved; (2) the special skill and experience of counsel; (3) the quality of

representation; and (4) results obtained. *See Morales*, 96 F.3d at 364. Here, depending on

attorney experience, the hourly rates of Fish Law ranged from $340 to $600 per hour. The rate

billed for paralegal work was $200 per hour. And the rates of attorneys at The Amin Law Group

ranged from $275 to $350 per hour. Rates of this nature have been generally recognized in this

District as appropriate within the context of intellectual property litigation. *See SATA GmbH &

Co. KG v. NingBo Genin Indus. Co.*, No. 2:16-cv-2546, 2018 WL 1796296, at *2 (D. Nev. Apr.

16, 2018) (Dorsey, J.) (noting that "rates between $295 and $675 are reasonable for trademark

litigation in Las Vegas"); *Rubbermaid Commercial Prod., LLC v. Tr. Commercial Prod.*, No.

2:13-cv-2144, 2014 WL 4987878, at *8 (D. Nev. Aug. 22, 2014), *report and recommendation

adopted*, No. 2:13-CV-2144-GMN, 2014 WL 4987881 (D. Nev. Oct. 6, 2014) (Navarro, J.) (in a

patent infringement action, approving rates of up to $624.75 per hour). Therefore, taking into

account the complex nature of patent litigation, the experience and training of Bird-B-Gone's

attorneys, (see Mot. Default J. 17–19, ECF No. 19), the quality of the complaint, motion for

1    default judgment, and other filings, and the very good result obtained in this case, the Court finds

2    these rates to be reasonable.

3       Therefore, after making the aforementioned adjustments, the final lodestar calculation is

4    $61,406.73. There is a "strong presumption" that the lodestar figure represents a "reasonable fee"

5    that the court should enhance or reduce only in "rare and exceptional cases." *See Fischer*, 214

6    F.3d at 1119 n. 3. Accordingly, based on the foregoing findings, and with no opposing argument

7    from Haierc, the Court finds the lodestar reasonable. Thus, the Court will award Bird-B-Gone

8    attorneys' fees in the amount of $61,406.73, as well as allowable costs totaling $1,335.51. (*See*

9    Mot. Default J. 19.)

10                                  **CONCLUSION**

11       IT IS HEREBY ORDERED that the motion for default judgment and permanent

12    injunction (ECF No. 19) is GRANTED. A separate permanent injunction order will issue.

13       IT IS FURTHER ORDERED that Bird-B-Gone is hereby awarded attorneys' fees and

14    costs in the amount of $62,742.24.

15       IT IS SO ORDERED. This 28th day of September, 2018.

16

17                                      _____

                                          ROBERT C. JONES

18                                        United States District Judge

19

20

21

22

23

24